LOREN N. BUGBEE and Charles V. Green, Appellants, v. COUNTY OF STEELE et al., Respondents.

(170 N. W. 321.)

**Primary election — removal of county seat — submitting question to voters — injunction to prevent — action for — petition in.**

1. In an action by plaintiff to perpetually enjoin and restrain defendants from taking any further proceedings in the matter of submitting to the electors of Steele county at the primary election to be held June 26th, 1918, the question of the removal of the county seat of Steele county, and from distributing ballots therefor, and canvassing returns from the votes at such primary election, such primary election for the removal of said county seat being held under and pursuant to the provisions of chapter 102 of the Session Laws of 1917, which relates only to the removal of that class of county seats not on a railroad or an interstate river, it is *held* the relief prayed for should not be granted and the application for perpetual injunction should be denied.

**Petition — form and substance — notice — primary election ballot — laws relating to — compliance with.**

2. The form and substance of the petition, notice, and ballot used in said primary election were a sufficient compliance with the requirements of chapter 102 of the Session Laws of 1917, and other laws adopted as a part thereof.

Opinion filed December 11, 1918.

Appeal from the District Court of Steele County, North Dakota, Honorable *A. T. Cole,* Judge.

Affirmed.

*George A. Bangs* and *George R. Robbins,* for appellants.

*P. O. Sathre* and *Engerud, Divet, Holt, & Frame,* for respondents.

GRACE, J. Appeal from the district court of Steele county, North Dakota, Honorable A. T. Cole, Judge.

The relief demanded in the complaint is to perpetually enjoin and restrain defendants from proceeding any further in the matter of submitting to the electors of Steele county at the primary election to be held June 26, 1918, the question of the removal of the county seat of Steele county and from distributing ballots therefor, or receiving or canvassing any returns from the votes cast at said election on said question, or declaring the result thereof, or from placing on the ballot for the general election November, 1918, the names of the towns receiving the highest votes for county seat at such primary election, or from taking any further steps to place before or submitting to the electors of Steele county the question of the removal or relocating of the county seat at the general election in November, 1918. The proceedings had with the object of removing the county seat of Steele county to some other place within the county were had under chapter 102 of the Session Laws of 1917, which chapter is applicable only to county seats not located on the railroad or interstate river. There are only three such county seats in this state, those of Dunn, McKenzie, and Steele counties. Sherbrooke is the county seat of Steele county. The law then applies only to this class of county seats of which there are but three. The case involves the correct interpretation of chapter 102 of the Session Laws of 1917.

The complaint, after alleging that the plaintiffs are taxpayers, and

then setting forth the names of the present duly elected, qualified, and acting board of county commissioners, and the name of the auditor and deputy auditor of the county, and the location of the county seat at Sherbrooke in said county for more than twenty years, sets forth the following petition, which was presented to the county commissioners on May 15, 1918:

"To The Honorable Board of County Commissioners in and for the County of Steele, State of North Dakota:

"We, the undersigned, qualified electors of the county of Steele, state of North Dakota, respectfully petition the honorable board of county commissioners of said Steele county, and pray that the county seat of said Steele county be removed from its present location at Sherbrooke to some other and more convenient place in said county, and to that end demand that the board of county commissioners of said Steele county order and cause to be submitted to the electors of said county at the next primary election to be held on the 26th day of June, 1918, the question of relocating the county seat of said county of Steele, and the designation of their choice of such location."

The complaint shows there were 874 legally qualified electors of the county, constituting more than three fifths of all the votes cast in the county at the last preceding election, and who verified by his affidavit the petition in the manner required by law. Upon the filing of the petition, the board of county commissioners adopted the following resolution:

"A petition having been presented to the board of county commissioners bearing 874 signatures, which petition is duly verified by the oath of subscribers thereto, setting forth that such subscribers are residents of Steele county, North Dakota, and qualified voters therein, and that each of said subscribers personally signed his name to said petition, having known the contents and purposes thereof, which petition prays for submission to the voters of said Steele county, at the next primary election to be held in June, 1918, of the proposition of removal of the county seat of said Steele county, from Sherbrooke, its present location, to some other and more convenient place in said Steele county; and said petition having signers, and the number of signatures thereto having been compared with the election returns of the last preceding general election in said county; and the commis-

sioners being satisfied that said petition is signed by qualified electors of said Steele county equal in number to more than three fifths of all the votes cast in said Steele county at the last preceding general election; and the commissioners being further satisfied that said petition is in due form as required by law; therefore

"Be it resolved, that the proposition of removal of the county seat of Steele county from Sherbrooke, its present location, to some other and more convenient place in said Steele county, be submitted to the voters thereof at the next primary election, to be held on June 26th, 1918, and that the auditor be instructed and directed to prepare ballots for said proposition, to be distributed to the several election precincts of said Steele county together with the primary election supplies for said primary election."

That thereafter and on May 20, 1918, the county auditor prepared notices of the primary election, to be held June 26th, 1918, and in said notices included, as part thereof, a notice that at said primary election, among other questions to be submitted to the electors, was the question of county seat removal; that the reference to the question in said notice was as follows:

## County Seat Removal.

The proposition of removing the county seat from Sherbrooke to some town on the railroad will be voted on at this election.

The notice was published in all the newspapers of the county, being, in number, four, and for five times, once each week in the regular edition of said newspaper during the four successive weeks between the 20th day of May, 1918, and the date of the primary election. The five copies of the said election notice to each voting precinct were delivered by the county auditor to each of the inspectors of election for each precinct in the county, which were posted in five public places in each precinct at least five days before election. One place of posting being at the regular polling place of each precinct. The ballot used in the election upon the question of county seat removal is as follows:

## County Seat Ballot.

On the proposition of removal of the county seat of Steele county from its present location at Sherbrooke to some other and more convenient place in said Steele county.

The voter will indicate his choice for county seat of Steele county by writing or posting the name of the place he prefers in the blank space. For location of the county seat of Steele county, at . . . []

Chapter 102, as far as material to this controversy, provides "that in counties where the county seat is not located on a railroad or interstate river, the question of county seat removal may be voted at any primary election, and if more than two towns are contending for the location of the county seat at such election, then the two towns receiving the highest vote at such primary election, and these two towns only, shall be placed on the official ballot at the first following general election, and the town then receiving the highest number of votes cast for the county seat location at such general election shall be designated the county seat of such county, and the county seat located thereat. . . .

"The provisions as to petition, notice, ballot, etc., provided by law for election for the removal of county seats shall be applicable to the primary election therein provided for, as well as the general elections."

Those provisions of law which are applicable to the general elections are made applicable to the primary election in counties where the county seat is not on the railroad or an interstate river, and where there are two or more candidates contending for the county seat. Those sections are 3233 to 3239 of the Compiled Laws of 1913, both inclusive. These are the sections and the law referred to in chapter 102, the provisions of which are to govern the petition, notice, ballot, etc., in voting upon the question at the primary election as to the removal of the county seat where the same is not located upon a railroad or interstate river. The legislature intended that chapter 102, as finally enacted into law, would be of the same force and effect as if there had been incorporated therein in their entirety §§ 3233 to 3239, both inclusive. The above sections referred to are applicable to the

petition, notice, and ballot, etc., involved in the instant case.  The petition in the instant case corresponds with the requirements of 3233, the section describing the requirements of the petition.  The petition in this case is legally correct and is a sufficient compliance with the requirement of said section.  This is true, though the place to which removal is desired is not inserted in the petition.  Said section does not specifically require the name of the place to which removal is to be made to be inserted.  This petition closely follows the requirements of the section and is a sufficient and substantial compliance with the same.  The majority of the court also feel that this construction in this case is not in conflict with the holding of this court in the case of Miller v. Norton, 22 N. D. 196, 132 N. W. 1080.  The writer, however, believes that the holding in this case, with regard to the requirements of the petition, is in harmony with the plain words of our statute, § 3233, but that it is in conflict with the holding in the Miller v. Norton Case with reference to the necessity of naming the place or places in the petition to which the removal of the county seat is desired to be made.  The petition also fulfils the requirements of § 3234 as to the number and qualifications of the petitioners.  Notice of election in the instant case complies with the requirements of § 3235, which prescribes how notice of such election shall be given.  The ballot in the instant case was so drawn that there was a blank space in which elector could write the name of the town which he preferred as the place to which the county seat should be removed, and he is required by law to place opposite the name written in the mark (X).  The court is of the opinion that the ballot in such form was a sufficient compliance with the requirements of § 3236.  The requirements of 3236 as to voting by the elector is as follows:  "In voting on the question, each elector *must vote for the place in the county which he prefers by placing opposite the name of the place the mark (X)."*  It would seem the ballot in this case, having a blank space in which the elector could write the name of the place in the county which he preferred as the place to which the county seat should be removed, is sufficient to afford such elector an opportunity of expressing his choice.  He could write in the name of any town that he desired and it was his duty to mark the (X) after it.

The order of the trial court overruling the plaintiffs' demurrer to the answer is affirmed, with statutory costs on appeal.

ROBINSON, J. (concurring specially). This is a county seat case in which the plaintiff appeals from an order sustaining a demurrer to the answer. The case relates to an election for the location of the county seat of Steele county. The county is in the form of a square, consisting of sixteen congressional townships. The present county seat is at Sherbrooke, a village 2 miles south of the center of the county.

The two largest, most promising and most accessible towns in the county are Hope and Finley on the Great Northern Railway. Prior to the last general election three fifths of the voters filed with the county auditor a petition in due form to the county commissioners for the relocation of the county seat at some more convenient place. Thereupon the commissioners passed a resolution to submit the question to a vote at the primary election on June 26, 1918. Notice of election was duly advertised and every citizen of the county went to the polls and voted on the question. Finley received 938 votes, Hope received 744 votes, and Sherbrooke received 411 votes. Hope is on the south border of the county and at an equal distance from the east and the west lines. Finley is 5 miles west from the very center of the county.

As the answer shows, the whole procedure has been substantially in accord with the statute. There has been a fair vote and no one has been in any way deceived or misled, and under the statute, at the next general election, the voters of the county shall have an opportunity to choose between Hope and Finley.

Under the statute a petition for the removal or relocation of the county seat must be signed by the qualified electors of the county equal in number to at least three fifths of all the votes cast in the county at the last preceding general election. Comp. Laws, § 3234.

The notice of such election, clearly stating its object, must be given and the election must be held as prescribed by law in regard to the submitting of questions to the electors of a locality under the general election laws. Comp. Laws, § 3235.

And in counties where the county seat is not located on a railroad or interstate river, the question of county seat removal may be voted

41 N. D.—11.

on at any primary election, and if more than two towns are contending for the location of the county seat at such election, then the two towns receiving the highest vote at such primary election, and those two towns only, shall be placed on the official ballot at the first following election, and the town then receiving the highest number of votes cast for the county seat location at such general election shall be designated the county seat of such county. Laws 1917, chap. 102.

The answer set forth the petition which was signed by three fifths of the voters, the resolution of the commissioners for the submission of the same to a vote at the primary election in June, 1918, the publication of notice, the fact that the election was thoroughly advertised and discussed, and that every qualified person voted by ballot in due form, and the votes were counted as above stated for Finley, Hope, and Sherbrooke, and that on the county seat question, there were more votes cast than on any other question.

The demurrer is that the answer does not state facts sufficient to constitute a defense. It does not point out wherein the answer fails to state any material facts, but it does state facts sufficient to show a substantial compliance with the statute. If either pleading is subject to a general demurrer it is the complaint. It shows no equity, and together the complaint and answer do show a fair, honest, and substantial compliance with the statute.

Objection is made to the election notice, to some matters of form and the naming of the procedure. The answer to all the objections is that they are technical, have no equity and no bearing on the merits of the case. Nothing is more certain than that the voters of the little county have had a fair notice and a fair opportunity to express themselves, and they all went to the polls and voted for the place of their choice. Of course, the fewest number of votes were given for Sherbrooke, and so it would have been if there were a thousand elections, because it is manifestly no place for the county seat, and it is proper and right that the voters should have an opportunity to fix their county seat in a proper place and to choose between Hope and Finley.

The purpose of the statute is to give the people of a county a fair opportunity to go to the polls and vote for the location or relocation of their county seat when it is not on a river or a railroad, because it is a well-known fact that a county seat should be on some line of traffic

and commerce and readily accessible to the public. And it is not for this court to thwart the will of the voters and the purpose of the statute by any technical refinements.

Order should be affirmed.

BRUCE, Ch. J. (specially concurring). I concur in the above opinion, though not in its dicta. I am, of course, not prepared to take judicial notice that Sherbrooke is not a fit place for a county seat.